300 Ga. 521
FINAL COPY

S16A1657.  MOSLEY v. THE STATE.

HINES, Chief Justice.

Following the denial of his motion for new trial, as amended, Sean Mosley appeals his convictions and sentences for malice murder and possession of a knife during the commission of a crime in connection with the fatal stabbing of Michael Coleman.  Mosley challenges the sufficiency of the evidence of his guilt and the trial court's supplementation of the record of his trial.  Finding the challenges to be without merit, we affirm.[1]

The evidence construed in favor of the verdicts showed the following. On the evening of September 15, 2011, witnesses near the intersection of Jenkins

---

[1] The crimes occurred on September 15, 2011.  On November 1, 2011, a Richmond County grand jury returned an indictment against Mosley charging him with malice murder, felony murder while in the commission of aggravated assault, and possession of a knife during the commission of a crime.  He was tried before a jury June 11-13, 2012, and found guilty of all charges.  On June 13, 2012, Mosley was sentenced to life in prison for malice murder and a consecutive five years in prison for possession of a knife during the commission of the murder; the felony murder verdict stood vacated by operation of law. A motion for new trial was filed on June 19, 2012, and an amended motion for new trial was filed on April 7, 2015. The motion for new trial, as amended, was denied on February 9, 2016.  A notice of appeal was filed on February 18, 2016, and the case was docketed in the September 2016 term of this Court.  The appeal was submitted for decision on the briefs.

and Tuttle Streets in Richmond County heard Coleman screaming and saw him stumbling across a nearby yard into the intersection, where he fell into the gutter. Coleman was still alive but had several large stab wounds that were bleeding profusely. Coleman, a military veteran, was then homeless, but was well known in the neighborhood. A neighbor, Dykes, witnessed a Caucasian man with dark hair, a teardrop tattoo under his eye, and a lip ring, which matched Mosley's distinctive description, leaving the crime scene on a bicycle. Coleman had suffered twenty sharp force injuries to his head, neck, chest, back, arms, and legs. Several of these wounds were three to five inches deep and had punctured major organs.

Investigators at the scene found a trail of blood leading from where Coleman had collapsed to a couch on a nearby porch, where he was apparently staying. The couch and the surrounding area were covered in blood. Analysis of gashes in the couch and the blood splatter led the investigators to conclude that a sharp object was used to fatally stab Coleman, that there had been no struggle at the scene, and that Coleman had either been sitting or lying on the couch at the time of the fatal attack.

Later that night, Mosley arrived at the home of Collins, whom Mosley had

2

known for about a month; he was living with Collins after Mosley's mother had said he could no longer live in her home. Mosley was covered in blood when he entered Collins's house, and explained to Collins that he had been in a bicycle accident.

The next morning, Mosley and Collins were on their way to work when Collins received a phone call about Coleman's murder. Collins asked Mosley if he had killed someone the night before, and Mosley replied that he had done so in self-defense after a man had pulled a gun on him. Collins attempted to convince Mosley to turn himself in to the police, but Mosley refused. At work, Collins told their boss, Schweitzer, that Mosley had admitted to stabbing someone. Unbeknownst to either Collins or Mosley, Schweitzer called police. When police approached Mosley at work, he fled and was apprehended roughly a quarter of a mile away.

Dykes identified Mosley in a photographic lineup as the individual he had seen fleeing from the crime scene. Investigators recovered a mountain bike from Mosley's residence, which had blood stains on the right brake handle.

At trial, Mosley testified in his own defense. He said that he did not know the victim and had never seen him before; he had gone to the intersection of

3

Jenkins and Tuttle Streets to buy marijuana, as the area was a location where he knew drugs were sold; Coleman approached him and asked if he wanted anything, and Mosley responded that he was looking to buy marijuana; Coleman replied that he did not have any on his person, but he could get some; Mosley then followed Coleman to the porch, and when he took out his wallet, Coleman attempted to take it from him and attacked him; Mosley then pulled out his knife and stabbed Coleman while they fought; they fell onto the couch during the altercation; Mosley stabbed Coleman in an attempt to get Coleman off of him, but that everything had happened so quickly that he did not remember the entire fight or how many times he stabbed Coleman; Mosley left the scene in a panic and dropped the knife somewhere before returning to Collins's house and going to bed; the following morning Mosley decided to turn himself in, but wanted to speak to his mother before doing so; and he started to walk to his mother's house and did not notice the police approach him at his work the morning when he was arrested.

The police never observed any injuries on Mosley. No weapon was found on Coleman. At the time of the killing, Mosley was in his early thirties, five feet nine inches tall, and weighed 170 pounds; the victim Coleman, who

4

was known as "little Mike," was fifty-four years old, five feet seven inches tall, and weighed 112 pounds.

1. Mosley contends that the evidence was insufficient to support the verdicts because there was no evidence that he killed Coleman with malice aforethought[2] or while in the commission of aggravated assault[3] or any other crime[4] but rather that the evidence was clear that he was acting lawfully in self-

_____

[2] OCGA § 16-5-1 (a) and (b) provide respectively:
> A person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being. Express malice is that deliberate intention unlawfully to take the life of another human being which is manifested by external circumstances capable of proof. Malice shall be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart.

[3] OCGA § 16-5-1 (c) provides:
> A person commits the offense of murder when, in the commission of a felony, he or she causes the death of another human being irrespective of malice.

[4] OCGA § 16-11-106 (b) provides:
> Any person who shall have on or within arm's reach of his or her person a firearm or a knife having a blade of three or more inches in length during the commission of, or the attempt to commit:
> (1) Any crime against or involving the person of another;
> (2) The unlawful entry into a building or vehicle;
> (3) A theft from a building or theft of a vehicle;
> (4) Any crime involving the possession, manufacture, delivery, distribution, dispensing, administering, selling, or possession with intent to distribute any controlled substance or marijuana as provided in Code Section 16-13-30, any counterfeit substance as defined in Code Section 16-13-21, or any noncontrolled substance as provided in Code Section 16-13-30.1; or
> (5) Any crime involving the trafficking of cocaine, marijuana, or illegal drugs as provided in Code Section 16-13-31,
> and which crime is a felony, commits a felony and, upon conviction thereof,

5

defense. But, the contention is unavailing.

> When this Court reviews the sufficiency of the evidence, it does not re-weigh the evidence or resolve conflicts in witness testimony, but instead it defers to the jury's assessment of the weight and credibility of the evidence. It is for the jury to resolve conflicts in the evidence and questions of witness credibility, not this Court.

(Citations and punctuation omitted.) *Glenn v. State*, 296 Ga. 509, 511 (1) (769 SE2d 291) (2015). Although Mosley testified that Coleman attacked him without provocation and that he stabbed Coleman merely in order to end being physically assaulted by him, the evidence of the disparity between the ages and physical sizes of Mosley and Coleman, Mosley's lack of injuries from the encounter, Coleman's being unarmed, the forensic evidence revealing that Coleman was seated or lying down when he was attacked, and the obvious savagery of the stabbing as demonstrated by Coleman's multiple and severe wounds, permit not only findings of implied malice on the part of Mosley and his commission of aggravated assault upon Coleman by the use of a knife, but belie the claim that the killing was justified as an act of self-defense. The question of Mosley's justification was for the jury to determine, and it was free

---

shall be punished by confinement for a period of five years, such sentence to run consecutively to any other sentence which the person has received.

6

to reject Mosley's version of the events, which obviously it did. Id. The evidence authorized the jury to find Mosley guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Due to recording equipment failure, the first day of Mosley's trial in June 2012 was unable to be transcribed. The trial court then held a hearing in May 2015 on a motion by the State to supplement the record with evidence of the missing day of trial. Three of the four witnesses who had testified at the first day of trial were heard, as well as Mosley's trial counsel, and the assistant district attorney who prosecuted the case. The same judge who presided over the first day of trial presided over the hearing. Following the hearing, the trial court granted the State's motion to supplement the record, finding that the testimony at the hearing was substantively the same testimony that was heard during the first day of trial and adequately supplemented the record.

Mosley contends that the trial court erred when it determined that the testimony at the hearing on the motion to supplement the record was sufficient. Although he acknowledges that the trial court followed the appropriate

procedures under OCGA § 5-6-41 (f),[5] in the situation in which a transcript cannot be produced, he argues that such procedures deny him his constitutional right to due process in that supplementation of the record is based only upon memory instead of what actually happened at trial.[6]

> OCGA § 5-6-41 (f) establishes a procedure whereby a party who contends that the transcript or record does not truly or fully disclose what transpired at trial may have the record completed either by stipulation of the parties as to what occurred or the independent recollection of the trial judge. If anything material to either party is omitted from the record, the omission may be corrected and, if necessary, a supplemental record filed.

*Carr v. State*, 267 Ga. 547, 550 (2) (480 SE2d 583) (1997). In the specific situation in which a portion of a transcript is lost or destroyed, subsections (f)

---

[5] OCGA § 5-6-41 (f) provides:
Where any party contends that the transcript or record does not truly or fully disclose what transpired in the trial court and the parties are unable to agree thereon, the trial court shall set the matter down for a hearing with notice to both parties and resolve the difference so as to make the record conform to the truth. If anything material to either party is omitted from the record on appeal or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the appellate court, on a proper suggestion or of its own initiative, may direct that the omission or misstatement shall be corrected and, if necessary, that a supplemental record shall be certified and transmitted by the clerk of the trial court. The trial court or the appellate court may at any time order the clerk of the trial court to send up any original papers or exhibits in the case, to be returned after final disposition of the appeal.

[6] Mosley has not pursued by enumerated error, argument, or supporting authority any claim that the statutory provision is unconstitutional on its face or as applied. Moreover, during the hearing on supplementing the record he did not request or receive any ruling in this regard.

and (g)[7] of OCGA § 5-6-41 permit the parties to re-create the transcript from memory and also allow the trial court to do so when the parties cannot agree as to what transpired. *Glass v. State*, 289 Ga. 542, 545 (2) (712 SE2d 851) (2011). In fact, when the parties are unable to agree as to the correctness of such a supplemental transcript, the issue is to be decided by the trial judge, and such decision is final and not subject to review. OCGA § 5-6-41 (g).

In this case, the trial court complied with OCGA § 5-6-41 (f) by holding a hearing on the State's motion to supplement the record and rehearing testimony of all but one of the witnesses who testified on the first day of trial as well as the recollections of the attorneys who tried the case. As noted, the trial court's adoption of this testimony to supplement the record is dispositive and not subject to review. *Leeks v. State*, 296 Ga. 515, 518 (2) (769 SE2d 296) (2015). The trial court's ruling provides no basis to overturn Mosley's

---

[7] OCGA § 5-6-41 (g) provides:

Where a trial is not reported as referred to in subsections (b) and (c) of this Code section or where for any other reason the transcript of the proceedings is not obtainable and a transcript of evidence and proceedings is prepared from recollection, the agreement of the parties thereto or their counsel, entered thereon, shall entitle such transcript to be filed as a part of the record in the same manner and with the same binding effect as a transcript filed by the court reporter as referred to in subsection (e) of this Code section. In case of the inability of the parties to agree as to the correctness of such transcript, the decision of the trial judge thereon shall be final and not subject to review; and, if the trial judge is unable to recall what transpired, the judge shall enter an order stating that fact.

convictions or to grant him a new trial.

Judgments affirmed.  All the Justices concur.

Decided February 6, 2017.

Murder. Richmond Superior Court. Before Judge Brown.

Sara E. Meyers, for appellant.

Ashley Wright,  District Attorney, Joshua B. Smith, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General. for appellee.