307 Ga. 537
FINAL COPY

S19A1344. CLARK v. THE STATE.

PETERSON, Justice.

Shawn Clark appeals his malice murder conviction for killing

Antonio Ellison.[1] Clark did not dispute at trial that he intentionally

shot Ellison, but claimed that his actions were justified because he

was defending himself and his vehicle. On appeal, Clark argues that

the State failed to disprove defense of habitation beyond a

reasonable doubt. Clark also argues that his trial counsel was

ineffective for failing to impeach a key witness with prior felony

convictions, failing to object to the State's comments on Clark's pre-

arrest silence, and failing to object to the State's misstatements on

---

[1] Ellison was killed on November 14, 2015. In February 2016, a Douglas County grand jury indicted Clark for malice murder, felony murder, and aggravated assault. Following a trial held from January 29 to February 5, 2018, the jury found Clark guilty on all counts. The trial court sentenced Clark to life for malice murder, and the remaining charges were merged or vacated by operation of law. Clark filed a timely motion for new trial on February 12, 2018, which he later amended with new counsel on January 4, 2019. On April 16, 2019, the trial court denied Clark's motion for new trial following a hearing. Clark timely appealed, and his case was docketed to this Court's August 2019 term and orally argued on October 23, 2019.

the presumption of innocence. We affirm because (1) the jury was authorized to conclude that the use of deadly force was unreasonable under the circumstances ☐ an element of the defense of habitation statute relied on here ☐ and (2) trial counsel was not deficient or, if he was, any deficiency did not prejudice Clark.

Viewed in the light most favorable to the jury's verdicts, the trial evidence showed the following. Clark shot and killed Ellison on November 14, 2015. Ellison had been in a relationship with Kira McClure for about nine years, they dated "on and off" in the year before the shooting, and the couple had three children together. Although Ellison and McClure were not dating at the time of Ellison's death, they and their children continued to live together in Douglas County, along with members of Ellison's family, including Ellison's brother, Sydrick Lindley.

The evening before the shooting, Clark, a former police officer, went to pick up McClure at Ellison's house because they had planned to go on a date. Ellison became upset that McClure was dating another man and argued with McClure before she left.

2

While McClure was out with Clark, Ellison sent her text messages indicating that he was upset and that he put her personal items outside of the house because she was no longer welcome. McClure spent the night with Clark, and Clark gave her a ride back to Ellison's house the next day. While riding in Clark's SUV, McClure noticed a gun in the cup holder between the two front seats; the gun had not been there the night before.

When McClure and Clark arrived, Ellison and Lindley were talking at the top of the driveway. Upon seeing McClure and Clark, Ellison walked down the driveway and approached the driver's side of Clark's vehicle. Clark opened the door, and he and Ellison exchanged words as Clark remained seated. McClure, who was sitting in the passenger seat, said that the exchange was not loud or aggressive. Lindley could not hear what Ellison or Clark said to each other from the top of the driveway.

After exchanging words with Clark, Ellison slapped Clark in the face, grabbed Clark by his shirt, and tried to pull Clark out of the SUV. Clark resisted Ellison's efforts to remove him from the

vehicle; during their struggle, Clark was able to fend Ellison off with one hand while reaching for his gun with the other. Lindley described the fighting as "child's play." McClure testified at trial that the men were engaged in a "tug-of-war"; she did not see any injuries to Ellison or Clark or see anything during the struggle (other than Clark's gun) that caused her to believe that either Ellison or Clark could be seriously hurt.

Clark eventually removed the gun out of its holster and fired a shot at Ellison, striking him in the torso. Ellison had his head down into Clark's chest at the time and could not have seen the gun. Ellison stepped back or fell away from Clark after the first shot, screamed out in surprise about being shot, and put his hands up. Ellison was falling when Clark in quick succession fired two more shots at Ellison, one of which struck Ellison in the head. Ellison died from his gunshot wounds.

Clark began to drive away and ran over Ellison in the process. Before leaving the neighborhood, Clark let McClure out of the vehicle. McClure later asked Clark why he killed Ellison. Clark

4

responded that he was in fear for his life because "they were going to come and get him" and claimed that Ellison had been punching and kicking him. McClure challenged Clark, stating that Ellison had hit Clark only once.

Clark claimed self-defense and defense of habitation during a police interview and at trial. Clark testified that he was scared when Ellison approached the vehicle, hit him repeatedly, and tried to remove him from the vehicle. Clark claimed that he shot at Ellison because Ellison threatened to kill him. Clark also testified that Ellison continued to attack him after the first shot so he fired one or two additional shots at Ellison. Despite Clark's claims to a detective during a police interview that Ellison repeatedly hit him, the detective testified at trial that, several hours after the shooting, there were no visible marks, redness, or bruising on Clark's body or any signs that Clark was in pain.

1. Clark argues that the evidence was insufficient to convict him of malice murder because the State failed to disprove defense of habitation beyond a reasonable doubt.  We disagree.

5

When we consider the sufficiency of the evidence, our review is limited to whether the trial evidence, when viewed in the light most favorable to the verdicts, is sufficient to authorize a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); *Mims v. State*, 304 Ga. 851, 853 (1) (a) (823 SE2d 325) (2019). "Under this review, we must put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the trier of fact." *Mims*, 304 Ga. at 853 (1) (a) (citation and punctuation omitted).

When a defendant raises an affirmative defense that is supported by some evidence, the State has the burden of disproving that defense beyond a reasonable doubt. See *Bishop v. State*, 271 Ga. 291, 291 (2) (519 SE2d 206) (1999). It is for the jury to determine whether the State has met its burden in this respect. See *Crayton v. State*, 298 Ga. 792, 793 (1) (784 SE2d 343) (2016); see also *Mosley v. State*, 300 Ga. 521, 524 (1) (796 SE2d 684) (2017) ("The question of

6

[the defendant's] justification was for the jury to determine[.]"). Our role in cases raising colorable justification defenses is to determine whether the evidence, viewed in the light most favorable to the verdicts, was sufficient to disprove those defenses. See *Joachim v. State*, 263 Ga. 816, 817 (1) (440 SE2d 15) (1994).

Defense of habitation is governed by OCGA § 16-3-23,[2] which outlines generally when a person is authorized to use any force in the defense of habitation and also sets forth three specific contexts in which deadly force is authorized. See *Fair v. State*, 288 Ga. 244, 257 (2) (A) (3) (702 SE2d 420) (2010). On appeal, Clark argues that his use of deadly force was authorized under two of the circumstances provided by OCGA § 16-3-23, that a person is justified in using deadly force if:

> (1) The entry [into a habitation] is made or attempted in a violent and tumultuous manner and he or she reasonably believes that the entry is attempted or made for the purpose of assaulting or offering personal violence to any person dwelling or being therein and that such force is necessary to prevent the assault or offer of personal violence; . . . or

---

[2] For purposes of OCGA § 16-3-23, the term "habitation" means "any dwelling, motor vehicle, or place of business." OCGA § 16-3-24.1.

(3) The person using such force reasonably believes that the entry is made or attempted for the purpose of committing a felony therein and that such force is necessary to prevent the commission of the felony.

OCGA § 16-3-23.[3]

Here, the jury was authorized to conclude that the use of deadly force was unreasonable. Clark correctly notes that we have said that the defense of habitation "allows the use of deadly force in certain situations even if the occupant does not fear death or great bodily injury." *Coleman v. State*, 286 Ga. 291, 297 (6) (687 SE2d 427) (2009) (citation and punctuation omitted). But the defense of habitation statute places a condition on the use of deadly force in situations like Clark's that do not involve unlawful and forcible entry of a residence. Here, the evidence must establish that the defendant had "an objective reasonable belief that the [assailant] is

---

[3] The third circumstance in which deadly force is authorized ☐ not at issue here ☐ occurs when "[t]hat force is used against another person who is not a member of the family or household and who unlawfully and forcibly enters or has unlawfully and forcibly entered the *residence* and the person using such force knew or had reason to believe that an unlawful and forcible entry occurred[.]" OCGA § 16-3-23 (2) (emphasis added).

entering to assault, to offer personal violence, or to commit a . . . felony *and* that deadly force is *necessary* to prevent one of those acts." *Fair*, 288 Ga. at 257 (2) (A) (3) (emphasis added; also noting that OCGA § 16-3-23 (2) omits the reasonable belief standard present in the other paragraphs). The statute makes plain that, in the circumstances relied on by Clark here, the defendant must have reasonably believed that the use of deadly force was necessary. See id. It is for the jury to determine whether the use of deadly force was reasonable under the circumstances. See, e.g., *Darden v. State*, 271 Ga. 449, 451 (3) (519 SE2d 921) (1999); *Anderson v. State*, 245 Ga. 619, 623 (266 SE2d 221) (1980).

The evidence authorized a jury to find that deadly force was not reasonable. Although Ellison slapped Clark, McClure testified that it was only once, with an open hand, and was not preceded by any aggressive or loud words. After the slap, the men were in a struggle, but Lindley testified that the encounter was like "child's

play,"[4] while McClure described it as a "tug-of-war" in which neither Ellison nor Clark appeared to be in any danger of serious harm. The detective who interviewed Clark after the encounter testified that he did not see any injury to Clark or signs that Clark was in pain. Given this evidence, the jury was authorized to reject Clark's testimony that Ellison threatened to kill him and that Ellison repeatedly hit him, even after Clark fired the first shot. See *Kemp v. State*, 303 Ga. 385, 388 (1) (a) (810 SE2d 515) (2018) (the trier of fact is authorized to accept or reject any portion of the testimony presented to it). Moreover, given that the evidence also supported a finding that Ellison only slapped Clark once and caused him no visible harm, the jury was authorized to conclude that Clark's belief that deadly force was necessary to end the encounter was not reasonable under the circumstances.

---

[4] Lindley also testified that Ellison kept hitting Clark after the initial slap. But the jury was not required to credit Lindley's testimony in this respect. See *Kemp v. State*, 303 Ga. 385, 388 (1) (a) (810 SE2d 515) (2018) ("The trier of fact is not obligated to believe a witness . . . and may accept or reject any portion of the testimony." (citation and punctuation omitted)).

2. Clark next argues that his trial counsel was ineffective in several ways. To prevail on any of his claims, Clark must show both "that trial counsel's performance fell below a reasonable standard of conduct and that there existed a reasonable probability that the outcome of the case would have been different had it not been for counsel's deficient performance." *Scott v. State*, 290 Ga. 883, 889 (7) (725 SE2d 305) (2012) (citing *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)). Failure to meet one prong of the *Strickland* test is fatal to an ineffectiveness claim. *Leanos v. State*, 303 Ga. 666, 669 (2) (814 SE2d 332) (2018).

To establish deficient performance, Clark must "overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." *Mims*, 304 Ga. at 855 (2) (citation and punctuation omitted). To demonstrate prejudice, Clark must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome." Id. (citation and punctuation omitted).

(a) Clark asserts that trial counsel was ineffective for failing to impeach Lindley with two felony convictions for possession of marijuana with intent to distribute, arguing that discrediting Lindley was crucial to his defense. We disagree.

Although trial counsel testified at the motion for new trial hearing that he had no reason for failing to investigate Lindley's criminal history for impeachment material, Clark cannot establish that he was prejudiced by any deficiency. Trial counsel impeached Lindley by pointing out that Lindley did not have a clear view of the encounter between Clark and Ellison and repeatedly referencing Lindley's familial relationship with Ellison, suggesting his bias in favor of Ellison. Additionally, Lindley's testimony regarding the deadly encounter was similar to that of McClure, and any differences in Lindley's testimony may have been beneficial to

12

Clark.[5] For these reasons, there is no reasonable probability that any additional impeachment of Lindley with his prior convictions would have made any difference to the outcome of Clark's trial. See *McCoy v. State*, 303 Ga. 141, 143 (2) (810 SE2d 487) (2018) (no prejudice from trial counsel's failure to impeach witness with prior testimony because the inconsistencies at issue were explored in detail during cross-examination and other witnesses testified similarly regarding the manner in which the defendant shot the victim); *Barrett v. State*, 292 Ga. 160, 177-178 (3) (c) (4) (733 SE2d 304) (2012) (given trial counsel's cross-examination of witness regarding the inconsistencies between her testimony and prior statement to police, appellant failed to show a reasonable probability that result of trial would have been different with additional impeachment of witness).

(b) Clark next argues that trial counsel was ineffective for failing to object or move for a mistrial when the prosecutor

---

[5] For example, contrary to McClure's testimony that Ellison slapped Clark only once, Lindley testified that Ellison punched Clark several times after slapping him.

commented during opening and closing arguments on Clark's failure to call 911 or turn himself in after the shooting. We disagree.

Clark argues that trial counsel was deficient based on the bright-line rule this Court established in *Mallory v. State*, 261 Ga. 625, 629-630 (5) (409 SE2d 839) (1991), in which we concluded that the State may not comment on a criminal defendant's pre-arrest silence or failure to come forward to law enforcement. But *Mallory* was an evidentiary holding decided under our old Evidence Code. At the time of Clark's trial, which was conducted under the current Evidence Code, the continued viability of *Mallory* was unsettled. See, e.g., *Eller v. State*, 303 Ga. 373, 384 (IV) (E) (811 SE2d 299) (2018). After Clark's trial, and after the trial court considered Clark's motion for new trial in which he raised the ineffectiveness claim, we decided *State v. Orr*, 305 Ga. 729 (827 SE2d 892) (2019), and concluded that *Mallory* had been abrogated by the new Evidence Code and that pre-arrest silence might be admissible under certain circumstances.

Since deciding *Orr*, we have rejected ineffectiveness claims based on trial counsel's failure to make *Mallory* objections in trials conducted under the current Evidence Code, because *Mallory* did not apply to those trials. See, e.g., *Scott v. State*, 306 Ga. 417, 420 (2) (831 SE2d 813) (2019); *Jackson v. State*, 306 Ga. 266, 273 (5) (a) (830 SE2d 99) (2019). Clark's ineffectiveness claim similarly must fail.

Recognizing that his *Mallory* argument was not likely to prevail, Clark alternatively asks that we remand the case for the trial court to determine the admissibility of the State's comments under the *Orr* standard and then evaluate whether trial counsel was ineffective for failing to object to any impermissible comments. We decline to do so. The trial court rejected Clark's claim primarily because it found that trial counsel's attempts to use the State's comments to help the defense's theory was not patently unreasonable.[6] Specifically, the trial court found that trial counsel

---

[6] The trial court's order, issued prior to our decision in *Orr*, noted in a footnote that trial counsel could not be deficient for failing to object based on the unsettled nature of *Mallory* at the time of the trial.

15

acted reasonably by attempting to show that Clark left the scene and did not immediately come forward because Clark felt that he had been set up, he feared Ellison's family would retaliate against him, and he needed time to collect himself and ensure his safety. Regardless of whether the State's comments would be permissible under *Orr*, Clark makes no argument, much less a sufficient showing, that the trial court erred in concluding that trial counsel's decision not to object was objectively unreasonable.

Whether to object to a particular part of a prosecutor's argument is a tactical decision, and trial counsel's decision not to object must be objectively unreasonable to constitute deficient performance. See *Peoples v. State*, 295 Ga. 44, 60 (6) (757 SE2d 646) (2014); see also *Young v. State*, 305 Ga. 92, 97 (5) (823 SE2d 774) (2019) ("Whether the potential upside of arguably objectionable testimony exceeds its downside is a question of trial strategy, and [appellant] has failed to show that his lawyer's strategy was patently unreasonable."). Because Clark has failed to establish that

16

trial counsel's decision not to object was unreasonable, he cannot prevail, and there is no reason to remand.

(c) Clark next argues that trial counsel was ineffective for failing to object to the following statements by the prosecutor during closing arguments:

> So you heard earlier, or at least during voir dire, possibly during opening, about the presumption of innocence. And the defendant did enter into this case with the presumption of innocence, and he was presumed innocent until proven guilty. But the presumption doesn't stay during the entirety of the case. *You don't get to hide under the cloak of the presumption of innocence*. It's there until it's overcome with evidence. And so at which point ☐ and it could be anywhere in the trial. *It could be after witness number one said my name is whatever. If you believe that he's guilty at that point, then at that point the presumption of innocence is gone and then he's guilty*. Once you believe a person is guilty, they are.

Clark argues that the italicized language was an improper statement of the law, because it gave the jury the mistaken belief that the State could satisfy its burden of proving his guilt simply by having a witness say his or her name.

The prosecutor's statements on the presumption of innocence plainly misstated the law. A single witness merely stating his or her

17

name is not sufficient evidence to overcome the presumption of innocence. Although trial counsel should have objected to the prosecutor's statements, Clark cannot establish that he was prejudiced by any deficiency. The trial court correctly charged the jury on the presumption of innocence, burden of proof, and reasonable doubt at the beginning of the trial and in its final instruction to the jury. The jury was presumed to follow the trial court's instructions, and Clark has presented nothing to overcome this presumption. See *Blount v. State*, 303 Ga. 608, 613 (2) (e) (814 SE2d 372) (2018) (rejecting ineffectiveness claim based on failure to object to misstatement of law because the jury was presumed to follow the correct instructions of the law provided by the trial court); *Allen v. State*, 277 Ga. 502, 504 (3) (c) (591 SE2d 784) (2004) (same). Therefore, Clark's ineffectiveness claim on this ground fails.

*Judgment affirmed. All the Justices concur.*

DECIDED DECEMBER 23, 2019.

Murder. Douglas Superior Court. Before Judge Emerson.

*Arora & Lascala, Manubir S. Arora*, for appellant.

*Ryan R. Leonard, District Attorney, Sean A. Garrett, Aimee F. Sobhani, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General*, for appellee.