**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 7, 2022**

# In the Court of Appeals of Georgia

A22A0511. AARON v. THE STATE.

PINSON, Judge.

This appeal follows our remand of a previous appeal for further findings. Anthony Todd Aaron was found guilty by a jury of criminal attempt to commit malice murder and possession of a knife during the commission of a felony, as well as two counts of aggravated assault that were merged for sentencing purposes. In his initial appeal, Aaron contended that he had been deprived of his constitutional right to self-representation at trial, *Faretta v. California*, 422 U. S. 806, 835-36 (V) (95 SCt 2525, 45 LE2d 562) (1975), but that the record did not reflect his unequivocal assertion of that right because a "pertinent albeit tiny portion of the trial transcript" from the morning of jury selection had been omitted. Because the transcript appeared to be incomplete, we remanded the case so the trial court could hold a hearing under

OCGA § 5-6-41 (f) and (g) to "make the record conform to the truth." Id. at (f). See *Aaron v. State*, ___ Ga. App. ___ (Case No. A20A2001, decided January 29, 2021) (unpublished) ("*Aaron I*").

On remand, the trial court held that hearing. Crediting the testimony of the court reporter and Aaron's trial counsel, which was consistent with its own recollection, the court found that the transcript was not, in fact, incomplete. Although the transcript contained an error, the court found that the court reporter had "appropriately addressed" the error, and that the transcript "now accurately reflects" what transpired. The court then concluded that Aaron never made an unequivocal assertion of his right to represent himself. Therefore, the court held that its failure to hold a *Faretta* hearing was not error and did not entitle Aaron to a new trial.

In this appeal, Aaron contends that the trial court erred on remand by (1) denying his post-hearing request for a second remand hearing to obtain additional testimony, and (2) failing to certify that the court was unable to recall what had transpired at the *Jackson-Denno*[1] hearing on the day before jury selection, when Aaron now claims that he unequivocally asserted his right of self-representation. But Aaron was not entitled to a second hearing because he had the opportunity to obtain

---

[1] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

the additional testimony at the first hearing, but declined to do so. And Aaron has

failed to show any omission from the *Jackson-Denno* transcript that would warrant

the certification he claims the trial court should have made. Aaron has shown no error

in the trial court's reconstruction of the transcript and has failed to point to any

portion of the record that would establish an unequivocal assertion of his right to

represent himself. We therefore affirm both the trial court's post-remand order and

Aaron's judgment of conviction and sentence.

## Background

### (a) *The Crimes and Convictions*

As we explained in Aaron's initial appeal, the evidence at trial showed that

Aaron choked and repeatedly stabbed the victim, his "on-again, off-again" romantic

partner, with a kitchen knife. At his August 2018 trial, Aaron testified in his own

defense and admitted to stabbing the victim, but claimed he had done so only to

prevent her from taking his car and not with the intent to kill her. The jury found

Aaron guilty of attempted murder, aggravated assault, and possession of a knife

during the commission of a felony.

### (b) *The Contested Trial Transcript and the First Appeal*

In his initial appeal, Aaron contended that the trial court had improperly denied him the right to represent himself at trial. He pointed to a portion of the transcript that he claimed contained a gap, and he asserted that in that gap, he had unequivocally asserted his right to represent himself. That portion of the trial transcript is found at the beginning of a discussion on the first day of trial among the trial court, the prosecutor, Aaron's trial counsel, and Aaron. After initial questioning of the venire, a brief recess had been taken, and the transcription resumed with trial counsel in mid-sentence. The transcript reads as follows:

> (Whereupon, the Court took a brief recess.)
>
> (Whereupon, the proceedings resumed.)
>
> (Whereupon, the defendant was present in the courtroom.)
>
> [TRIAL COUNSEL] RICE: – be whether or not they would hold it against my client if he represented himself. And so if, [the prosecutor], doesn't know whether to ask that question. And I was hoping I could pick the jury, and then he could make that decision, you know, about whether or not to make an opening and just take over. But I think they feel like – the State feels like that decision needs to be made –
>
> THE COURT: Well, so far he's indicated that you're representing him, and we've done everything to the effect that he'll make the decision as to whether he'll testify. So he hasn't raised it again with me yet.

4

[TRIAL COUNSEL] RICE: Okay.

THE COURT: So you cannot ask him. What do you care?

[ASSISTANT DISTRICT ATTORNEY] PETERSON: The only issue I have, Your Honor – and I – I don't know how you've perceived, kind of, what he says. Wiggins versus the State, which I've handed up, just says if he's made an unequivocal statement saying he wishes to represent himself, it's reversible error if we don't go ahead and ask him the questions and ask him if he wants to represent himself. If it's equivocal, then it's not –

THE COURT: I think it's been equivocal because we had the whole discussion during the Jackson-Denno about the technicalities and we discussed yesterday some other stuff. Come on in. Have a seat.

(Whereupon, the defendant entered the courtroom.)

. . .

THE COURT: Okay. So, you know, you kind of beat around the bush a little bit about representing yourself. You saw the technicalities of Jackson versus Denno. Mr. Rice isn't going anywhere, one way or the other. What do you want to actually do?

DEFENDANT AARON: I'll sit here and, you know –

THE COURT: I mean, he's got to listen to what you tell him, right? He works for you; you understand that?

5

DEFENDANT AARON: I hope so. I hope so. I hope so.

THE COURT: He does.

DEFENDANT AARON: I hope so.

THE COURT: No, there's no hope so. He works for you. You don't have to like what he says, but he works for you.

DEFENDANT AARON: He works for the State.

THE COURT: No. He doesn't work for the State. He's not a yes-man though. . . .


. . .

THE COURT: Okay. So I'm going to let him do voir dire. But you – if you have anything you want him to ask, you give it to him, okay?

DEFENDANT AARON: Yes, sir.

THE COURT: Okay. Is that okay with you, Mr. Rice?

[TRIAL COUNSEL] RICE: Yes, sir.

Following this exchange, the court brought the first panel of prospective jurors back into the courtroom and continued with voir dire.

6

In our opinion deciding the original appeal, we identified two issues that needed clarification on remand. The first issue was the content of any discussion that took place before the transcription picked up and in particular, whether Aaron had told the court at that time that he wanted to represent himself. The second issue, which relates to the first, was whether Aaron "was present in the courtroom" at the beginning of the exchange, as the transcript states, or whether he "entered the courtroom" in the middle of it, as the transcript also states. These two issues were relevant to the question whether Aaron had asserted his right to represent himself and, in turn, whether the court's failure to hold a *Faretta* hearing entitled him to a new trial. So we remanded the case and directed the trial court to get to the bottom of these two issues. See OCGA § 5-6-41 (f) (providing that "[w]here any party contends that the transcript or record does not truly or fully disclose what transpired in the trial court and the parties are unable to agree thereon, the trial court shall set the matter down for a hearing . . . and resolve the difference so as to make the record conform to the truth").

(c) *The Remand Hearing*

7

At the hearing on remand, the court heard testimony from the court reporter who took down Aaron's trial, Aaron's trial counsel, and Aaron himself. The hearing was conducted by the same trial judge who had presided over the trial.

The court reporter, Domenica Turchiarelli, first addressed the issue of Aaron's presence in the courtroom. Turchiarelli testified that the parenthetical in the middle of the excerpt in question should have noted that the judge's staff attorney—not "the defendant"—entered the courtroom in the middle of the discussion about Aaron's representation. In other words, she explained that the transcript should reflect that Aaron was present at the time Turchiarelli began transcribing and at all other times during the exchange in question, and that it was the staff attorney who walked into the courtroom while that exchange was in progress.

As to the purported missing portion of the transcript, Turchiarelli testified that neither she nor the trial judge had been in the courtroom during that part of the conversation and that she and the trial judge had entered the courtroom at the "exact same time," at which time she immediately began recording:

> We had taken a brief recess. We then entered the courtroom at the exact same time. [The trial judge] took the bench, and I went through the side door of the courtroom. And, at that moment, [trial counsel] Rice was speaking to [Assistant District Attorney] Peterson. I went immediately

8

to my desk and began taking down. The Court addressed Mr. Rice and Ms. Peterson, and I did not know if what was about to be said would be something that needed to be on the record, so I immediately started taking down.

She also testified that the transcript—which she verified against an audio recording before certifying it, and which she compared with her notes before testifying at the remand hearing—is complete and accurate and fully captures every instance in which Aaron addressed the trial judge.

Aaron's appointed trial counsel, Sanford Rice, testified that Aaron clearly "wanted to participate" actively in his own defense, but Aaron never unequivocally told him or the court that he wanted to represent himself. According to Rice, Aaron believed Rice was working for the State, so Aaron did not trust him and "wanted to basically use [him] as a hand puppet." But "as far as being specific and certain that he wanted to try his case personally," Rice testified that he "[did not] recall [Aaron] ever saying that." Rice recalled that the trial judge asked Aaron at several points during the proceedings whether he wanted to take the lead: "So, [the judge] would, at each point, question [Aaron] about it, the motion, picking the jury, and the actual trial: What do you want to do?" Each time, Aaron demurred.

In reference to the exchange captured in the contested portion of the transcript, Rice explained:

> when [the judge] came in, I think [Aaron] was squabbling and saying some things, and so, I went over and discussed it with [the prosecutor]. The Judge probably saw us. I think he might have called us up for a colloquy[.]

When asked whether he had ever addressed the court off the record about Aaron's being unhappy with his representation, Rice testified that he did not believe he had done so and that whatever he had communicated to the judge had been on the record.

Aaron himself then testified, maintaining that he had clearly told the trial judge he wanted to represent himself. His testimony about when and how many times he had made that assertion, however, was inconsistent. On direct examination, Aaron testified that he told the court two different times that he wanted to represent himself *on the day before* voir dire began, when the trial court conducted his *Jackson-Denno* hearing. But on cross-examination, Aaron testified that the only time he had told the judge he wanted to represent himself was "right before" jury selection. Then, on redirect, Aaron again testified that he made that assertion the day before jury selection. And on recross, he shifted yet again to claiming that "I told the judge one or two times," the first time being "before we picked the jury." Aaron also admitted

10

that he had never filed any pro se motions asking the court to allow him to represent himself.

After Aaron testified, the State closed its evidence. In doing so, the State decided not to call ADA Peterson, whose attendance the State had secured in case it was deemed necessary for her to testify. Aaron's counsel then closed his evidence.

(d) *The Trial Court's Order*

Following the hearing, the court issued an order finding that the transcript as originally certified was complete and that the error in the transcript had been corrected. Crediting the testimony of Rice and Turchiarelli and rejecting Aaron's testimony as not credible and not consistent with the court's own recollection, the court found that nothing was missing from the transcript and that Aaron had been present in the courtroom from the beginning of the contested exchange. The court also rejected Aaron's "insinuat[ion]" that he had asked to represent himself on the day before trial before the start of the *Jackson-Denno* hearing, finding based on the hearing testimony and its own recollection that the transcript from that day's proceedings—which reflects no such request—was accurate and complete. The court then concluded that the transcripts did not document Aaron having made any unequivocal assertion of his right to self-representation, and noting that the record

11

contains no other evidence—such as pro se motions or letters to the court—that Aaron ever told the court he wanted to represent himself. The court noted that it took seriously Aaron's expressions of dissatisfaction with his counsel—particularly over counsel's advice that he should not testify at trial—and thus engaged Aaron on several occasions about whether he wished to represent himself. But on none of these occasions, the court found, did Aaron ever express an unequivocal desire to proceed pro se. Thus, the trial court determined that no *Faretta* hearing was required. Aaron appealed.

Discussion

On appeal, Aaron contends that the trial court erred in reconstructing the trial transcript, and that he is therefore entitled to a new trial. See *Johnson v. State*, 302 Ga. 188, 191-92 (3) (805 SE2d 890) (2017) ("[A] defendant convicted of a crime has a right to appeal, and a defendant convicted of a felony has a right to a transcript of the trial to use in bringing that appeal. If an appellant is deprived of an adequate transcript, he has effectively been deprived of his right to appeal . . . [and] is therefore entitled to a new trial." (citations omitted)). Code Section 5-6-41 (f) sets out the process by which trial courts resolve disputes about the correctness or completeness

of the trial transcript or record.[2] When a transcript has been reconstructed under that process, the correctness of the transcript as determined by the trial court is "final and not subject to review." OCGA § 5-6-41 (g). Accord *Mosley v. State*, 300 Ga. 521, 525 (2) (796 SE2d 684) (2017) ("when the parties are unable to agree as to the correctness of . . . a supplemental transcript, the issue is to be decided by the trial judge, and such decision is final and not subject to review"). On the other hand, whether that transcript is "complete" is reviewable on appeal, and that review may include the

---

[2] That Code section provides in full:

Where any party contends that the transcript or record does not truly or fully disclose what transpired in the trial court and the parties are unable to agree thereon, the trial court shall set the matter down for a hearing with notice to both parties and resolve the difference so as to make the record conform to the truth. If anything material to either party is omitted from the record on appeal or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the appellate court, on a proper suggestion or of its own initiative, may direct that the omission or misstatement shall be corrected and, if necessary, that a supplemental record shall be certified and transmitted by the clerk of the trial court. The trial court or the appellate court may at any time order the clerk of the trial court to send up any original papers or exhibits in the case, to be returned after final disposition of the appeal.

13

adequacy of the process used to recreate the transcript. See *Bamberg v. State*, 308 Ga. 340, 347 (2) (839 SE2d 640) (2020); *Johnson*, 302 Ga. at 194-95 (3) (b) (holding that process for reconstructing missing trial transcript was insufficient to create a complete transcript and thus concluding that defendant was entitled to a new trial). With these limits on our review in mind, we turn to our review of the trial court's reconstruction and Aaron's specific contentions on appeal.

1. We start with the trial court's general process for reconstructing the transcript. The process for supplementing or reconstructing a transcript is generally adequate—and the reconstructed transcript is thus deemed complete—as long as a hearing is held and testimony about the content of the missing portion is adduced from those who were present during the proceedings in question. Compare *Bamberg*, 308 Ga. at 345-46 (2) (reconstructed transcript was complete where court held hearing and State presented all five witnesses whose testimony was recorded in missing portion of transcript, as well as testimony of trial prosecutor and clerk of court, who both testified that witnesses' current testimony was consistent with their recollection and contemporaneous notes); *Mosley*, 300 Ga. at 525 (2) (reconstructed transcript was complete where court held hearing featuring testimony from three of the four witnesses whose testimony was in the missing transcript, as well as from the

14

prosecutor and defense counsel), with *Johnson*, 302 Ga. at 194-96 (3) (b) (reconstructed transcript was not complete where it was prepared by the State solely from contemporaneous notes taken by the trial judge, the prosecutor, and a district attorney's office investigator, and yielded a scant 14-page, double-spaced transcript "purporting to summarize a six-day trial and sentencing hearing").

Here, the trial court followed the required process. The court held a hearing and heard testimony from two of the three participants in the discussion at issue as well as the court reporter who took down the proceedings. See *Bamberg*, 308 Ga. at 345-46 (2); *Mosley*, 300 Ga. at 525 (2). The contested portion of the transcript was, as Aaron admits, "tiny," making it far easier to reconstruct than, say, several entire days of testimony. Cf. *Johnson*, 302 Ga. at 195 (3) (b) (missing transcript covered six days of proceedings). The trial court was able to make credibility assessments of the three witnesses, see generally *Riggins v. Stirgus*, 319 Ga. App. 790, 790 (738 SE2d 635) (2013) (when trial court sits as trier of fact, "it is the sole arbiter of credibility" (citation and punctuation omitted)), and was also able to compare their testimony to the court's own recollection of the proceedings. In short, we see no error in the general process the trial court used to reconstruct the transcript.

15

2. Aaron raises two specific issues with the trial court's reconstruction effort: the court's refusal to hold another hearing, and its failure to "certify" that it did not recall what happened at the *Jackson-Denno* hearing. We address each issue in turn.

(a) Aaron first takes issue with the trial court's refusal to hold a second remand hearing to allow him to call ADA Peterson to testify, a decision we review for abuse of discretion. See *Walton v. State*, 303 Ga. 11, 16 (4) (810 SE2d 134) (2018). Aaron contends that because the State, "without warning," elected not to call ADA Peterson to testify at the initial remand hearing, the reconstruction of the transcript was necessarily incomplete. But he cites no authority (and we are aware of none) that requires the court to hear testimony from *every* trial participant to comply with OCGA § 5-6-41 (f). In fact, our Supreme Court has approved a transcript reconstructed with the testimony of fewer than all of the original testifying witnesses. See *Mosley*, 300 Ga. at 525 (2).

Moreover, Aaron actually had the opportunity to call ADA Peterson to testify at the original remand hearing, but he opted not to do so. Having squandered that opportunity, he cannot now complain that the process for reconstructing the transcript was flawed or that the transcript, as it now stands, is incomplete. See *Bamberg*, 308

16

Ga. at 349-50 (2) (where State presented witness testimony to reconstruct missing portion of transcript and defendants declined to call their own witnesses and otherwise "failed to avail themselves of the opportunity to participate," they could not establish error, "even if the transcript theoretically could have been made more certain"). See generally *Strozier v. State*, 231 Ga. 140, 141 (1) (200 SE2d 762) (1973) ("a party cannot sit idly by and ignore what appears to him to be an injustice, in the hope of a favorable [outcome], and then complain when these hopes are denied him by an unfavorable one"). In short, we see no abuse of discretion in the trial court's refusal to reopen the evidence in a second remand hearing.

(b) Aaron also claims that the trial court erred by "failing to certify it was unable to recall what transpired" on the date of the *Jackson-Denno* hearing. But the court's order, which states that the testimony at the remand hearing was consistent with its recollection, reflects that the court was able to recall the proceedings in question. Thus, the court had no basis for certifying that it was *unable* to recall what had transpired, and so this enumeration is meritless.

*Judgment affirmed. McFadden, P. J., and Gobeil, J., concur.*

17