**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: March 3, 2026

S26A0510. SENIOR v. THE STATE.

PETERSON, Chief Justice.

Oscar Senior appeals his convictions for malice murder and other offenses, stemming from the 2012 shooting of Charles Willis.[1]

---

[1] The crimes took place on April 13, 2012. On July 9, 2013, a Muscogee County grand jury returned an indictment charging Senior with the malice murder and felony murder of Willis, the aggravated assault of Douglas Body, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. At an April 2014 trial, a jury found Senior guilty of all counts, except the felon-in-possession count, which had been bifurcated for trial and was eventually nolle prossed. The trial court sentenced Senior to life in prison without the possibility of parole for malice murder, a concurrent sentence of 20 years in prison for aggravated assault, and a consecutive sentence of five years in prison for possession of a firearm during the commission of a felony. The trial court purported to merge the felony murder count into malice murder, notwithstanding that the felony murder count in fact was vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 372 (1993). On April 29, 2014, Senior filed a motion for new trial, amended by new counsel on December 5, 2019. Following a hearing in January 2020, the trial court denied the motion in an order entered on February 14, 2020. Senior did not file a timely notice of appeal. Senior filed a petition for a writ of habeas corpus, which was granted in an order entered on October 14, 2025, providing the limited relief of an out-of-time appeal based on ineffective assistance of counsel in failing to file a timely notice of appeal. A notice of appeal of Senior's

His sole enumeration of error is that his trial counsel was ineffective for failing to impeach two of the State's witnesses with their prior felony convictions. We conclude that any deficient performance by counsel in this regard did not prejudice Senior, and so we affirm.

The evidence admitted at trial[2] showed that on the afternoon of April 13, 2012, Willis was driving his cousin Douglas Body in a car in Muscogee County. When they stopped at a stop sign, they saw Senior, with whom they were acquainted, and his girlfriend, Vinyetta Longino, walking along the roadway. Willis said something to Senior. Senior pulled out a handgun and fired at the car, fatally shooting Willis in the head. Warrants for Senior's arrest were issued shortly after the shooting, but he was not apprehended until more than five months later, on September 27, 2012, after police received a call about a man running through someone's yard. When arrested,

---

judgment of conviction was filed by habeas counsel on October 28, 2025. The case was docketed to this Court's term of court beginning in December 2025 and submitted for consideration on the briefs.

[2] Because this case involves questions of prejudice under *Strickland v. Washington*, 466 US 668 (1984), the trial evidence is described in some detail rather than only in the light most favorable to the jury's verdicts. See *Asmelash v. State*, 323 Ga. 33, 34 n.2 (2025).

Senior appeared disheveled, "like he had been [living] on the street," and he was carrying a toothbrush. He resisted officers' attempt to restrain him upon arrest.

Longino, Body, and other witnesses testified at trial and implicated Senior as the shooter. Longino testified that as she and Senior were walking with their baby, a red car pulled up and she heard the driver say, "What's up, Oscar?" Longino testified on direct that when Senior did not respond, she heard the driver say, "Oh, you ain't going to speak to your boy, Charles." Longino testified that Senior then pulled out a gun and started shooting. Longino never heard a threat from the car or saw anyone besides Senior with a gun. On cross-examination, as recounted in the transcript, Longino agreed with defense counsel that when Senior did not respond to the driver of the red car, the driver said, "Oh, it's like that, N-word? You're not going to speak to your N-word?"

Body testified that when he and Willis saw Senior on the day of the shooting, Willis said, "Hey, Oscar, this is your homeboy, Charles," and "thr[e]w a hand up." Senior did not respond to the

greeting but told his girlfriend to take the baby home, before he started shooting at the car. Body testified that he saw that Senior had a revolver in his hand. Body saw Senior running down the street after the shooting stopped. Body testified that Willis did not have a weapon and did not make any verbal threats. On cross examination, defense counsel attempted to show that there were inconsistencies between Body's trial testimony and prior statements, suggesting that Body's view may have been impeded. Defense counsel also elicited Body's testimony that he heard six to eight shots.

Joseph Banks testified that he was standing in front of a house when he heard gunshots. Banks testified that he ran toward the sound and saw Willis lying on the ground bleeding and Senior running away. He saw a revolver in Senior's hand. Banks did not see anyone near the car with a gun when he went to render aid to Willis. Defense counsel asked Banks only one question on cross-examination, confirming that he had seen a revolver.

Erica Childress testified that she was sitting on her front porch when she saw the shooting. She identified the shooter as "Oscar,"

4

whom she also referred to as "Wolf." Childress testified that she saw "Wolf" push his girlfriend down a hill with the stroller before turning around and shooting. Childress did not see a gun near the victim.

The evidence showed four bullet holes in the driver's side door of Willis's car. Investigators collected eight bullet fragments from the inside of Willis's car. Investigators also found two bullet holes through the outside wall of a nearby home, at least one bullet jacket inside the residence, and a bullet hole in a tire of another car parked in front of the residence. The medical examiner testified that the only significant finding in Willis's autopsy was a gunshot wound to the head, and she found six fragments of a single bullet in his brain.

Senior did not testify at trial. In his defense, Senior introduced evidence that on October 1, 2012, police recovered a gun in a yard near the site of Senior's arrest. He also called as witnesses GBI firearms and fingerprints experts. Although not entirely clear in the record, it appears that the revolver referred to by the firearms and fingerprints experts is the revolver that was found near the site of Senior's arrest. Asked how many shots a revolver "[t]ypically" holds,

5

the GBI firearms expert testified that a Smith & Wesson revolver "will hold five to six shots." On cross-examination by the State, the firearms expert testified that the bullet fragments recovered during Willis's autopsy did not match the Smith & Wesson .38-caliber special revolver that she was given to test. A GBI fingerprint examiner called by the defense testified that she received a Smith & Wesson revolver and several cartridges, that the gun and four cartridges were "positive" for latent fingerprints, and that the fingerprints found on the gun did not match Senior. The fingerprint examiner clarified that only one of the items that she received, a cartridge, had a latent print "of value," and that print did not match Senior. The defense elicited the fingerprint examiner's testimony that she requested Willis's prints but did not receive them.

During closing arguments, defense counsel argued that the evidence showed that there was "another shooter" in the case. Among other points, counsel relied on Body's and Banks's testimony that Senior had a revolver, as well as the physical evidence and Body's testimony that he heard six to eight shots, to argue that there

6

were more shots fired than was possible from a revolver, creating reasonable doubt that Senior was the one who fatally shot Willis. Counsel also suggested that Senior may have been provoked in some way, notwithstanding that the trial court already had denied the defense request for a jury charge on voluntary manslaughter.

In his amended motion for new trial, Senior argued that trial counsel was ineffective for failing to investigate thoroughly the criminal histories of the prosecution witnesses. At the motion for new trial hearing, post-conviction counsel sought the admission of written records of several convictions of Body and Banks in Muscogee County Superior Court, describing the convictions as for burglary and theft by bringing stolen property into the state for Body; and possession of a controlled substance and another, unspecified, felony conviction for Banks.[3] The trial court denied the

---

[3] The State lodged no objection to admission of the documents, but the transcript does not specify that the documents were admitted by the trial court, and they do not appear to be contained in the record on appeal. In its order denying the motion for new trial, the trial court stated that certified copies of Body's and Banks's prior felony convictions "were entered into evidence at the hearing." The trial court's order also stated that Body's convictions were "12 and 14 years old" and Banks's convictions "were not so remote at approximately 8 and 9 years."

motion for new trial, concluding: "Given the totality of the evidence in the case, and given the independent testimony of Erica Childress, the Court finds that the Defendant has failed to meet the second prong of the test; he has not shown that, absent unprofessional errors on counsel's part, (which this Court is not necessarily finding) the result of the trial would have been different."

On appeal, Senior argues that he received ineffective assistance of counsel in that trial counsel did not introduce prior convictions to impeach two key prosecution witnesses, presumably Body and Banks.[4] To prevail on his ineffectiveness claim, Senior must show that (1) his trial counsel's performance was constitutionally deficient and (2) he was prejudiced by counsel's deficient performance. See *Strickland v. Washington*, 466 US 668, 687 (1984). If Senior fails to establish one of these two prongs, "we need not examine the other." *Robinson v. State*, 308 Ga. 543, 553

---

[4] Senior's six-page brief does not identify Banks and Body by name as the witnesses at issue. He contends that counsel "failed to introduce felony convictions to impeach two key witnesses called for prosecution" but the record citation for that statement does not correspond to anything relevant in the record.

8

(2020). To establish prejudice, Senior "must show that there is a reasonable probability that, but for counsel's unprofessional error[], the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694. "In reviewing a claim of ineffective assistance of counsel, we defer to the trial court's findings of fact unless they are clearly erroneous, but we apply the law to the facts de novo." *State v. Spratlin*, 305 Ga. 585, 591 (2019).

Assuming without deciding that counsel performed deficiently as alleged, we conclude that Senior has not met his burden to show prejudice. Besides the testimony of Body and Banks, Senior was implicated as the shooter by the testimony of two other eyewitnesses, including the mother of his child. The evidence of Senior's guilt also included evidence that Senior had evaded arrest while subject to an arrest warrant. See *Adams v. State*, 318 Ga. 105, 112 (2024) (attempt to evade arrest constitutes circumstantial evidence of consciousness of guilt); *State v. Orr*, 305 Ga. 729, 741 (2019) (fact of an accused's flight or resistance to arrest is evidence

9

of consciousness of guilt and thus guilt itself). And Senior has offered no specific argument as to how trial counsel could have used the convictions of Body and Banks to challenge their credibility under the specific facts of this case. Indeed, doing so may have undermined Senior's defense strategy — which relied in part on Body's and Banks's testimony that they saw Senior with a revolver that may not have been capable of firing as many shots as at least some evidence suggested had been fired — while not serving to challenge the inculpatory eyewitness testimony of Longino and Childress. Therefore, we conclude that Senior has not shown prejudice from any deficient performance by trial counsel in failing to introduce the witnesses' convictions. See *Clark v. State*, 307 Ga. 537, 542–43 (2019) (no prejudice from counsel's failure to impeach witness with felony convictions, given that counsel impeached witness in other ways, witness's account was similar to that of another witness, and any differences in the account may have been beneficial to the defendant); *Allen v. State*, 286 Ga. 392, 398–99 (2010) (even assuming deficient performance in counsel's failure to cross-

examine witness with regard to purported pending criminal charges, no prejudice shown given evidence of guilt apart from witness's testimony).

*Judgment affirmed. All the Justices concur.*