NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: June 24, 2025

S25A0719. PADGETT v. THE STATE.

WARREN, Presiding Justice.

Appellant John Padgett was convicted of malice murder in connection with the strangling death of his former girlfriend, Wynesha Medley.[1] In this appeal, Padgett contends that his trial counsel provided constitutionally ineffective assistance in three respects. As explained below, we affirm.

1. The evidence presented at Padgett's trial showed the following. Padgett and Medley dated for several months during

---

[1] Medley's body was found on January 24, 2017. In April 2017, a Chatham County grand jury indicted Padgett for malice murder, felony murder, and aggravated assault. At a jury trial from May 17 to 20, 2021, the jury found him guilty of all counts. The trial court sentenced Padgett to serve life in prison without the possibility of parole for malice murder, and the remaining counts were vacated or merged. Padgett filed a timely motion for new trial, which he later amended through new counsel. After an evidentiary hearing in September 2024, the trial court denied the motion in December 2024. Padgett filed a timely notice of appeal, and the case was docketed to this Court's April 2025 term and submitted for a decision on the briefs.

2016. After Medley ended the relationship in November 2016, Padgett repeatedly sent Medley "aggressive" text messages, which caused her to change her phone number. In early January 2017, he arrived at Medley's apartment and "bang[ed] on her door, crying" and "asking her to let him in and get back together." Around 2:30 a.m. on January 23, 2017, Medley awoke and noticed that there was no electrical power in her apartment. Later that day, a maintenance worker at Medley's apartment complex discovered that a switch on an exterior breaker panel had been moved to the "off position," such that only the power to Medley's apartment was turned off, while the breakers that controlled the power to the other apartments were still "on." Medley called the police, reported that she believed Padgett had turned off her power, and inquired about obtaining a protective order.

When Medley did not arrive at work the next day, January 24, 2017, a co-worker called the police and requested a welfare check. An investigator who responded to Medley's apartment that afternoon found her "cold," dead body lying on the floor, with a pair

2

of black "leggings" around her neck. The medical examiner who performed Medley's autopsy determined that her death was caused by strangulation; the medical examiner also noted abrasions on Medley's forehead and left eye.[2] Later forensic testing on fingernail clippings from Medley's right hand revealed the presence of Padgett's DNA.[3]

Investigators interviewed Padgett the next day, January 25, 2017; the interview was video-recorded and played for the jury at trial. During the interview, Padgett claimed that he had not been to Medley's apartment since December 2016, and he denied ever

[2] The medical examiner was not asked about Medley's time of death. The State's theory was that Medley was killed on the night of January 23. In support of that theory, the State presented testimony from a neighbor of Medley's who said that she head "a scream" at the apartment complex around 9:00 p.m. that night.

[3] The forensic biologist who performed the testing testified that she also tested the pair of leggings and fingernail clippings from Medley's left hand. On cross-examination, she stated that the leggings contained DNA from Medley and a "second partial [DNA] profile" that "could not have been contributed by . . . Padgett." In addition, the forensic biologist's report, which was admitted into evidence, said that the DNA obtained from the fingernail clippings from Medley's left hand "contained the profiles of two individuals" and that "[t]he second partial profile" "could not have been contributed by . . . Padgett."

"threatening her." He also said that on the evening of January 22, he went to work and then home; he claimed that after he left work on the evening of January 23, he visited his grandmother's boyfriend, drove around for a while, and then went home. However, a mapping application on Padgett's cell phone showed that the phone traveled to Medley's apartment around 11:30 p.m. on January 22, and cell-site location information ("CSLI") showed that the phone was in the area of Medley's apartment at 12:15 a.m. on January 23, shortly before Medley noticed that her power was out. In addition, a friend of Padgett's testified that Padgett, who had a car of his own, borrowed the friend's car around 10:00 p.m. on January 22, returning it about two hours later. Padgett, who was wearing "all black," said that he was going to see a woman and "didn't want someone to see [Padgett's] car in the [woman's] neighborhood." CSLI also showed that Padgett's cell phone was near Medley's apartment from around 7:20 p.m. until 10:00 p.m. on January 23, the night before her body was found. And another friend of Padgett's testified that Padgett borrowed his truck around

4

7:00 p.m. that night and returned it around 10:00 p.m. Moreover, the investigators who interviewed Padgett on January 25 observed that he had several scratches on his hand and arm.

Padgett testified and told the following story. On the night of January 22, 2017, Medley came to his home and falsely claimed that she was pregnant. They argued, and as they "tussle[d]," their heads collided, such that Medley was hit on the left side of her head. And on the evening of January 23, Padgett borrowed his friend's truck to move a lawnmower; he then encountered a woman he knew. She was having "car trouble," so he took her car to his grandmother's boyfriend, who often worked on cars. He then returned the car to the woman, returned the truck to his friend, and went home. On cross-examination, Padgett claimed that his DNA likely was deposited on the fingernail clippings taken from Medley's right hand when they "tussle[d]" on January 22. He also said that the evidence showed that his cell phone was at Medley's apartment on January 22 and near the apartment on January 23 because the phone was connected to a tablet that he left inside the apartment in December

5

2016.

2. Padgett contends that his trial counsel provided constitutionally ineffective assistance in three respects. To prevail on these claims, Padgett must establish that counsel's performance was constitutionally deficient and that he suffered prejudice as a result. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984); *Washington v. State*, 320 Ga. 839, 851 (912 SE2d 600) (2025). To prove deficient performance, Padgett must show that counsel "'performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms.'" *Washington*, 320 Ga. at 851 (citation omitted). See also *Strickland*, 466 U.S. at 687-691. And to prove prejudice, Padgett must establish a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. See *Strickland*, 466 U.S. at 694; *Washington*, 320 Ga. at 851. We need not address both parts of the *Strickland* test if Padgett makes an insufficient showing on one. See *Strickland*, 466 U.S. at 697; *Washington*, 320 Ga. at 851.

6

(a) Padgett claims that trial counsel provided constitutionally ineffective assistance because during closing argument, he failed to assert that certain DNA evidence suggested that Padgett was not guilty. As discussed above, a forensic biologist testified at trial that fingernail clippings taken from Medley's right hand contained Padgett's DNA; fingernail clippings from Medley's left hand contained a partial DNA profile that was not contributed by Padgett; and the leggings used to strangle Medley also contained a partial profile that was not contributed by Padgett. Padgett contends that trial counsel was ineffective because he failed to argue in closing that the fingernail clippings from Medley's left hand contained another person's DNA—not Padgett's—and that this evidence indicated that someone other than Padgett killed her. Because trial counsel's decision not to make this argument was reasonably strategic, Padgett has not established that counsel was deficient.

The argument Padgett says his trial counsel should have made would not have been particularly persuasive. In this respect, an argument that the presence of an unknown person's DNA on

7

Medley's left hand (without any other evidence) proved that the unknown person killed her would have called the jury's attention to the State's parallel argument that the presence of Padgett's DNA on Medley's right hand showed that Padgett killed her. Trial counsel strategically attempted to downplay the incriminating DNA evidence from Medley's right hand and instead emphasized the DNA evidence found on the leggings, which was not attributed to Padgett. To that end, counsel asserted that Padgett's DNA could have been deposited on Medley's right hand long before she was killed, which was consistent with Padgett's testimony that his DNA likely was found on Medley because they "tussle[d]" at his home two days before her body was discovered. Counsel then argued to the jury that it was "really interesting" that "the actual instrument used to kill" Medley (that is, the leggings) contained an unknown person's DNA—not Padgett's—and argued that this evidence raised "tremendous reasonable doubt."

Under these circumstances, trial counsel's decision not to emphasize the DNA evidence from Medley's left fingernails was

8

objectively reasonable. Thus, Padgett has not shown that counsel performed deficiently, and this claim fails. See *Walker v. State*, 311 Ga. 719, 726 (859 SE2d 25) (2021) (explaining that "'decisions regarding trial tactics and strategy constitute deficient performance only if they were so patently unreasonable that no competent attorney would have followed such a course'") (citation omitted); *Anthony v. State*, 311 Ga. 293, 298 (857 SE2d 682) (2021) (explaining that a closing argument is "'to be judged in the context in which it is made'"; it is not patently unreasonable for defense counsel to base the defense on the defendant's account; and defense counsel is permitted "'wide latitude'" in closing argument and "'is not ineffective simply because another attorney might have used different language or placed a different emphasis on the evidence'") (citations omitted).

(b) Padgett also contends that trial counsel rendered ineffective assistance because he failed to investigate and present evidence related to an investigator's report that, Padgett alleges, would have shown that another man (who had also dated Medley)

9

"had seen . . . Medley" on the night before her body was found. Padgett asserts that the jury might have inferred from this evidence that the other man "could have been a potential suspect" in Medley's murder. Even assuming that trial counsel performed deficiently in this respect, Padgett's claim fails because he has not met his burden of establishing prejudice.

At the motion for new trial hearing, Padgett failed to introduce any evidence demonstrating what the man who dated Medley or the investigator who made the report would have said, had they been called to testify at trial. Padgett did not call those witnesses or present a legally acceptable substitute for their testimony, nor did he present any other evidence at the hearing to support this claim. Thus, Padgett has not demonstrated a reasonable probability that the outcome of his trial would have been different if counsel had investigated and presented evidence related to the report. As a result, this claim of ineffective assistance fails. See, e.g., *Sturkey v. State*, 319 Ga. 156, 162-163 (902 SE2d 607) (2024) (assuming that the appellant's trial counsel performed deficiently by failing to call

10

a witness who, the appellant claimed, would have testified that other people had motives to kill the victim and concluding that the appellant failed to establish prejudice, because he did not demonstrate what the uncalled witness's testimony would have shown by introducing "testimony from the uncalled witness or a legally recognized substitute for that testimony"); *Speziali v. State*, 301 Ga. 290, 295 (800 SE2d 525) (2017) (concluding that the appellant had not shown *Strickland* prejudice from his counsel's alleged failure to interview additional witnesses because the appellant "offered no evidence on this issue at the motion for new trial hearing").

(c) At trial, the State presented other-acts evidence pursuant to OCGA § 24-4-404 (b) showing that Padgett had attacked another former girlfriend after she ended their relationship. During closing argument, the prosecutor referenced the other-acts evidence and asserted that Padgett was "the type of man" to strangle Medley "because he's done it before"; "he's the type of man to resort to violence when he has been rejected by a woman that he wants."

11

Padgett claims that his trial counsel provided ineffective assistance by failing to object to these statements on the ground that the prosecutor improperly argued that the other-acts evidence showed Padgett's propensity for violence. Assuming, without deciding, that counsel performed deficiently by not objecting, Padgett's claim fails because he has not shown prejudice.

The prosecutor's allegedly improper statements were brief, and the trial court instructed the jury before the other-acts evidence was introduced and again during the final charge that the evidence was admitted for the limited purpose of showing Padgett's intent and motive, the jury could consider the evidence "only in so far as it may relate to those issues and not for any other purpose," and the jury was not permitted to "infer from such evidence that [Padgett] is of a character that would commit such crimes."[4] The trial court also told the jury that it was bound to follow the court's instructions and that closing arguments are not evidence. Moreover, the evidence of

---

[4] Padgett does not challenge the admission of the other-acts evidence or the trial court's limiting instructions about the evidence.

12

Padgett's guilt was compelling. CSLI showed that Padgett's phone was near Medley's apartment shortly before her power was cut off and again on the night before her body was found; he borrowed his friends' vehicles on those nights, indicating that he did not want his own car to be seen; his DNA was found under Medley's fingernails; he lied during his interview with investigators about his whereabouts near the time of the crimes; and during his testimony, he provided a different (but still implausible) account.

Because Padgett has not established a reasonable probability that the outcome of his trial would have been more favorable to him if trial counsel had objected to the prosecutor's statements, this claim of ineffective assistance, like the others, fails. See, e.g., *Washington*, 320 Ga. at 857 (holding that the appellant did not demonstrate that his trial counsel was ineffective for failing to object to the prosecutor's closing argument that misstated the law regarding the burden of proof because the appellant had not shown prejudice, as the evidence of his guilt was strong and the trial court "charged the jury on the burden of proof, the court's duty to instruct

13

the jury on the law, the jury's duty to follow the court's instructions, and the fact that closing arguments were not evidence"); *Clark v. State*, 307 Ga. 537, 544-545 (837 SE2d 265) (2019) (rejecting the appellant's claim that his trial counsel was ineffective for failing to object to the prosecutor's statements during closing argument that misstated the law regarding the presumption of innocence because the trial court twice correctly instructed the jury on that point and "[t]he jury was presumed to follow the trial court's instructions").

(d) Finally, Padgett argues that trial counsel's alleged errors caused him prejudice when considered collectively. See *Schofield v. Holsey*, 281 Ga. 809, 811 n.1 (642 SE2d 56) (2007), overruled on other grounds by *State v. Lane*, 308 Ga. 10, 17 (838 SE2d 808) (2020). Even considering the effect of the two instances of deficient performance that we assumed in Divisions 2 (b) and (c) above—counsel's failure to investigate and present evidence related to the investigator's report and counsel's failure to object to the prosecutor's statements during closing argument—Padgett has not shown prejudice sufficient to order a new trial. As discussed above,

14

Padgett introduced no evidence at the motion for new trial hearing to support his claim about the investigator's report, so he has shown no prejudice from counsel's alleged failure to investigate and present such evidence. And the prosecutor's statements were brief; the trial court twice correctly instructed the jury regarding how it should consider the other-acts evidence; and the evidence of Padgett's guilt was compelling. Thus, Padgett has not shown a reasonable probability that the outcome of his trial would have been different in the absence of these alleged deficiencies. See, e.g., *Troutman v. State*, 320 Ga. 489, 501 (910 SE2d 173) (2024) (rejecting the appellant's claim of cumulative prejudice from trial counsel's assumed deficiency in failing to raise a "more robust theory of defense" and from counsel's deficient performance in failing to object to the prosecutor's closing argument that mischaracterized the burden of proof, because the appellant presented no evidence at the motion for new trial hearing to support his claim about the theory of defense, such that he had shown "*no* prejudice" as to that claim, and the evidence of his guilt was strong) (emphasis in original).

*Judgment affirmed. Peterson, CJ, and Bethel, Ellington, McMillian, LaGrua, Colvin, and Pinson, JJ, concur.*