NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the
# Supreme Court of Georgia

No. S26A0513
Morris Charles Spann
v.
The State

On Appeal from the Superior Court of Clay County
No. 2011CR129

Decided: April 21, 2026

PINSON, Justice.

Morris Charles Spann was convicted of murder and other crimes in connection with the shooting death of his mother, Annie Bell Spann, and the non-fatal shooting of Willie James Ricks.[1] On

---

[1] The shootings happened on July 30, 2011. On September 12, 2011, a Clay County grand jury indicted Spann for malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), aggravated assault of Annie (Count 3), aggravated assault of Ricks (Count 4), possession of a firearm during the murder of Annie (Count 5), and possession of a firearm during the aggravated assault of Ricks (Count 6). Spann was tried before a jury from August 26 to 29, 2013. The jury found Spann guilty of all counts. Spann was initially sentenced to life in prison without the possibility of parole for murder, 20 years in prison for the aggravated assault of Ricks, and five years in prison for each of the firearm-possession counts, all to be served consecutively, for a total sentence of life without parole plus 30 years. The remaining counts merged for sentencing or were vacated by operation of law. Spann filed a timely motion for new trial on September 11, 2013, which he later amended through new counsel on June 1, 2018, and again on May 24, 2021. While the motion for new trial was pending, Spann moved to vacate his life-without-parole sentence as void because he was under 18 when the crimes were committed and the trial

appeal, he argues that the evidence was not sufficient to support his convictions as a matter of constitutional due process. But the evidence at trial was sufficient to authorize a rational jury to find beyond a reasonable doubt that Spann was guilty of his crimes of conviction and to reject any alternative hypotheses. So Spann's convictions are affirmed.[2]

1. In the light most favorable to the verdict, the evidence at trial showed the following.

In the early morning hours of July 30, 2011, Ricks was sitting out in front of his house when he saw Annie, who lived across the street, get home from work. Annie started knocking on her

court had not found that he was "irreparably corrupt" or "permanently incorrigible." See *Veal v. State*, 298 Ga. 691, 703 (2016). See also *Montgomery v. Louisiana*, 577 US 190, 209–11 (2016). But see *Holmes v. State*, 311 Ga. 698, 704–05 (2021) (recognizing that *Montgomery* does not require a trial court to "provide explicit, on-the-record explanations regarding determinations of permanent incorrigibility and the characteristics of children" before imposing a sentence of life without parole, and that *Veal* was "mistaken" to hold that such on-the-record findings are required). On March 15, 2021, the trial court granted the motion to vacate the sentence and resentenced Spann to life in prison with the possibility of parole for malice murder. Spann's sentences for his other convictions were unaffected. On September 24, 2025, the trial court denied Spann's motion for new trial. Spann filed a timely notice of appeal. His appeal was docketed to the term of this Court beginning in December 2025 and submitted for a decision on the briefs.

[2] After Spann was convicted, more than 12 years passed before his motion for new trial was resolved. As we have said before, "these extended and unjustified delays in resolving criminal cases make our State's criminal justice system appear unfair and grossly inefficient." *Owens v. State*, 303 Ga. 254, 259 (2018). See also *Sturkey v. State*, 319 Ga. 156, 164 (2024) (collecting examples of long delays between conviction and appeal). It is the duty of everyone involved in the criminal justice system, including trial courts, prosecutors, defense counsel, and defendants, to make sure that post-conviction motions are "filed, litigated, and decided without unnecessary delay." See *Sturkey*, 319 Ga. at 164–65 (citing *Owens*, 303 Ga. at 258).

own front door, and she kept knocking for a while. Ricks called out to her, "Must not be nobody home." Annie replied, "Yeah, he in here." Eventually the door opened, and Annie went inside.

A "couple of minutes" later, Ricks heard gunshots from inside Annie's home. The door opened and out came Spann, Annie's son. When Spann saw Ricks standing across the street, he shot Ricks in the leg. Spann then "took off" running. Ricks called out to his wife, and both Ricks and his wife saw Spann running away, holding a gun. No one else came out of Annie's home. Another witness who heard the gunshots told police that just after the shots, Ricks yelled out, "Fu!," which was short for Fufu, Spann's nickname in the neighborhood.

Ricks called 911 at 1:02 a.m. On that call, Ricks said he had been shot by "Bernard Spann," who was Spann's half-brother. But when police arrived, Ricks was "very clear" that the shooter was Spann, not Bernard, and that he had misnamed the shooter on the 911 call. Police contacted Bernard at a separate address and determined that he was not the shooter.

At the crime scene, police found Annie just inside her doorway, dead of multiple gunshot wounds. No one else was in the home. There was no sign of forced entry, and the only other door was locked from the inside. According to Spann's father, only he, Annie, and Spann had keys to the home. Detectives collected a number of .380-caliber cartridge casings from the scene. The cartridge casings were later determined to have been ejected from a .380-caliber handgun belonging to Spann's father, which a neighbor found in a gully near the crime scene a few months after the shooting.

Spann was arrested a couple of hours after the shooting, a little after 3:00 a.m., outside another home in the neighborhood. When an officer told Spann he was under arrest, Spann said, "For

what, I didn't shoot no one." Spann's shirt and pants were later found to have particles of gunshot primer residue, a substance that is expelled when a gun is fired, on them. Later that morning, Spann waived his *Miranda*[3] rights and agreed to an interview. In the interview, he gave a few inconsistent accounts of where he had been the previous evening but did not admit to killing his mother.

At trial, Spann testified in his own defense. Spann said that on the evening his mother was killed, he was home alone until around 7:30 p.m. or 8:00 p.m. At that point, he left to see if his uncle, who lived nearby, was at home. His uncle was not at home, so Spann "grabbed a chair and took a seat" in a neighbor's yard. He remained there until police arrived, which Spann said was "maybe an hour" later. Spann said he did not learn his mother had been shot until he arrived at the jail.

2. Spann claims on appeal that the evidence was not sufficient to support his convictions as a matter of constitutional due process. He also argues that the evidence did not eliminate or exclude all reasonable theories of innocence, like the hypothesis that Spann was just out taking a walk on the night his mother was shot, that the eyewitnesses who identified him were mistaken due to poor visibility, and that the gunshot primer residue got on his clothes in an innocent way.

When we evaluate a due process challenge to the sufficiency of the evidence, we view the evidence at trial "in the light most favorable to the prosecution" and ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 US 307, 319

---

[3] *Miranda v. Arizona*, 384 US 436 (1966).

(1979). Accord *Foster v. State*, 322 Ga. 425, 429 (2025). Any "conflicts or inconsistences in the evidence, credibility of witnesses, and reasonable inferences to be derived from the facts" are for the jury to resolve. *Perkins v. State*, 313 Ga. 885, 891 (2022) (quotation marks omitted). And as a matter of Georgia statutory law, a conviction that rests on circumstantial evidence alone cannot stand unless the evidence "exclude[s] every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. But importantly, not every alternative hypothesis is "reasonable." See *Moore v. State*, 314 Ga. 351, 354 (2022). Whether an alternative hypothesis "passes muster," see id., and whether the circumstantial evidence excludes any such hypotheses, are questions for the jury, see *Foster*, 322 Ga. at 429, and we will not disturb the jury's findings unless they are "insupportable as a matter of law." *Graves v. State*, 306 Ga. 485, 487 (2019).

Under those standards, the evidence at trial was sufficient to sustain Spann's convictions. As for the murder of Annie and the associated gun-possession charge, Ricks testified that he heard gunshots just before he saw Spann step outside holding a gun — which, as noted above, he then used to shoot Ricks. Both Ricks and his wife testified that Spann then fled the scene. Annie's body was found inside the home that Spann had fled, and investigators confirmed that no one else was in the home and that the only other door was locked from the inside. The murder weapon was found in the neighborhood, and Spann's father testified that it belonged to him. Spann was found to have gunshot primer residue on his clothes when he was arrested in the neighborhood. And when Spann was arrested, he denied shooting anyone, even though he had not been told anyone had been shot. From that evidence, a rational jury could infer that Spann fired the shots that Ricks heard, that those shots killed Annie, and that Spann then fled the scene and told police unprompted that he had

5

not shot anyone because he knew he was guilty. See *Foster*, 322 Ga. at 429–30 (jury could conclude that defendant inflicted fatal injuries on victim when defendant was alone with victim when injuries occurred); *Foots v. State*, 322 Ga. 116, 120 (2025) ("The fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, is admissible as evidence of consciousness of guilt, and thus of guilt itself." (punctuation omitted)); *McGarity v. State*, 311 Ga. 158, 161 (2021) (evidence sufficient to support conviction for murder included fact that defendant had access to murder weapon). As for the aggravated assault of Ricks and the associated gun-possession charge, Ricks testified that he saw Spann shoot him, which is an aggravated assault, see *Robinson v. State*, 323 Ga. 7, 11–12 (2025) (shooting at someone is aggravated assault), and both Ricks and his wife testified that they saw Spann running away holding a gun. And "[t]he testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-14-8. Spann argues that the witness identifications were not reliable because of the poor visibility on the street, but questions of witness credibility are for the jury to resolve. See *Hinton v. State*, 312 Ga. 258, 261 (2021) ("the determination of a witness's credibility, including the accuracy of eyewitness identification, is within the exclusive province of the jury" (punctuation omitted)). The jury here was authorized to credit Ricks's testimony and his wife's testimony, and to conclude that Ricks's initial identification of Bernard Spann was an error. See id. (jury could credit witness's identification of the defendant at trial although witness initially identified someone else).

Spann also contends that the evidence did not exclude all hypotheses of innocence. He does not cite OCGA § 24-14-6, the circumstantial-evidence statute, but to the extent he argues that the evidence does not satisfy the statute, his argument fails. As

an initial matter, that statute does not apply to Spann's convictions for the aggravated assault of Ricks and the associated gun-possession charge, because the evidence that Spann committed those crimes was not entirely circumstantial: Ricks saw Spann shoot him. Eyewitness testimony is direct evidence, see *Bradley v. State*, 318 Ga. 142, 144 (2024), and when there is direct evidence of a crime, OCGA § 24-14-6 does not apply, see id. As for the murder, assuming that the evidence of Spann's guilt was entirely circumstantial, the evidence was sufficient for the jury to reject any alternative hypothesis. As recounted above, Spann fled from the home with a gun immediately after the shooting, no one else was home, and the only other door was locked from the inside. The jury could reject as unreasonable a theory that some other perpetrator was in the home at the time and then vanished without a trace. See, e.g., *Merritt v. State*, 323 Ga. 23, 27 (2025) (jury could reject as unreasonable the defendant's hypothesis that alternate suspects brought guns to the crime scene but used household items to kill the victim, leaving no signs of a struggle, and that the alternate suspects brutally murdered the defendant's mother but left the defendant unharmed and free to leave even though they were angry at the defendant). The jury could also reject as unreasonable Spann's alternate story that he just went out for a walk and then sat in a neighbor's yard all night, especially given that some details of Spann's story changed when he spoke to the police and his story left a stretch of time unaccounted for: Spann said he was sitting for "maybe an hour" before the police came, but he was actually arrested more than seven hours after he said he left the house. See, e.g., *Long v. State*, 309 Ga. 721, 726 (2020) (jury could reject as unreasonable the defendant's alternate hypothesis, given that the defendant "changed her story … several times, each time giving an account that was dubious in light of the physical and medical evidence"). This claim of error

therefore fails.

*Judgment affirmed. All the Justices concur, except Warren, P.J., not participating.*